**UNITED STATES of America,**
**Plaintiff,**

v.

**Hector L. MARQUEZ FIGUEROA,**
**Defendant.**

**Crim. No. 02–139(SEC).**

United States District Court,
D. Puerto Rico.

Sept. 25, 2003.

Mary K. Butler, U.S. Department of Justice, Public Integrity Section, Washington, D.C., for Plaintiffs.

Juan R. Acevedo–Cruz, Hato Rey, PR, José F. Blanco–Torres, San Juan, PR, Richard O. Dansoh, Coral Gables, FL, Joseph C. Laws, Federal Public Defender's Office, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendant's motion to vacate the jury verdict entered against him in the above-captioned case (Docket ## 221 and 222). In essence, Defendant argues that the verdict entered against him finding him guilty of conspiracy to obstruct justice, commit perjury and suborn perjury is inconsistent with his acquittal of the substantive charges underlying said conspiracy. The Government has opposed Defendant's motion (Docket # 226), and Defendant has filed a reply to the Government's opposition (Docket # 230). Having reviewed the parties' arguments, as well as the relevant case law, Defendant's motion will be **DENIED**.

### Factual and Procedural Background

In June 2002, a Federal grand jury indicted Defendant Márquez on five counts:

Count I:    conspiracy to obstruct justice, commit perjury, and suborn perjury, in violation of 18 U.S.C. § 371;

Count II:   obstruction of justice, in violation of 18 U.S.C. §§ 1503a and 2;

Count III:  giving false testimony before the Federal grand jury in July 1998, in violation of 18 U.S.C. § 1623;

Count IV:   suborning the perjury of trial witness Gloria Ornales Hall, in violation of 18 U.S.C. §§ 1622 and 2; and

Count VI:   suborning the perjury of trial witness Héctor Ramírez Lugo, in violation of 18 U.S.C. §§ 1622 and 2.

On June 3, 2003, following a month-long trial, the jury returned a verdict convicting Defendant Márquez of Count I (the conspiracy count), and acquitting him of the remaining substantive counts.

Defendant Márquez contends that his acquittals on the substantive charges alleged in Counts II, III, IV and VI require

that his conviction on the conspiracy charged in Count I be vacated. In support of his extraordinary request for relief, Defendant asserts that the overt acts alleged in the conspiracy include the criminal conduct separately charged in the substantive offenses. Defendant argues that the jury's verdict is impermissibly inconsistent, and that it is, therefore, necessary that the jury's conviction on the conspiracy count be vacated.

### Standard of Review

Pursuant to Fed.R.Crim.P. 29(c), in a case where a verdict of guilty is returned after a jury trial, a Court may, upon a motion for judgment of acquittal, set aside the verdict and enter judgment of acquittal. Fed.R.Crim.P. 29(c). When considering such a motion, the standard to be applied is "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir.1964); *see also United States v. Doe*, 921 F.2d 340, 343 (1st Cir.1990). In assessing the sufficiency of the evidence under Rule 29, " 'we view the evidence and draw reasonable inferences in the light most favorable to the verdict.' " *United States v. Diaz*, 300 F.3d 66, 77 (1st Cir.2002) *quoting United States v. McGauley*, 279 F.3d 62, 66 (1st Cir.2002).

The evidence is legally sufficient if, taken as a whole, it warrants a judgment of conviction. *Id. citing United States v. Benjamin*, 252 F.3d 1, 5 (1st Cir.2001). Furthermore, "[i]t is not necessary for the government to disprove every reasonable hypothesis of innocence, provided that the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *United States v. Cuevas–Esquivel*, 905 F.2d 510, 514 (1st Cir.1990). Finally, we should bear in mind as we analyze the facts of the

present case that a verdict of guilty shall stand unless, after reviewing the evidence in the light most favorable to the prosecution, the Court finds that **no rational trier of fact** could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis added).

### Applicable Law and Analysis

The Supreme Court has long held "that a criminal defendant convicted by a jury on one count could not attack the conviction because it was inconsistent with the jury's verdict of acquittal on another count." *United States v. Powell*, 469 U.S. 57, 58, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (unanimous decision) *citing Dunn v. United States*, 284 U.S. 390, 393–94, 52 S.Ct. 189, 76 L.Ed. 356 (1932). This holding is generally known as the "Dunn rule," and it stands for the legal proposition that consistency in the verdict is not necessary in criminal trials. The Supreme Court in *Dunn* explained its reasoning when establishing this rule, as follows:

> "The most that can be said [about an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, **but that does not show that they were not convinced of the defendant's guilt**. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

> That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. **But verdicts cannot be upset by speculation or inquiry into such matters.**

*Dunn*, 284 U.S. at 393–94, 52 S.Ct. 189 (emphasis added; internal citations omitted).

In Dunn, the defendant was indicted on the following three counts in violation of Federal prohibition laws then in effect: 1) maintaining a common nuisance by operating a speakeasy; 2) possessing intoxicating liquor; and 3) selling intoxicating liquor. *Id.* at 391, 52 S.Ct. 189. The jury convicted the defendant of operating the illegal business, but acquitted him of the possession and sale of alcohol charges. *Id.* As in this case, the defendant in *Dunn* argued that the guilty verdict on the first count was inconsistent with the acquittals on the remaining counts and, thus, could not stand. *Id.* at 392, 52 S.Ct. 189. In other words, the defendant argued that it was impossible for the jury to have concluded that he ran a speakeasy without possessing or selling alcohol. *Id.* The Supreme Court disagreed and upheld the allegedly inconsistent verdicts, as discussed above. *Id.* at 393–94, 52 S.Ct. 189.

In 1984, a unanimous Court reaffirmed the broad scope of the *Dunn* rule. In the Supreme Court's opinion in *Powell,* the defendant was indicted on multiple counts of violating the federal drug laws. *Powell,* 469 U.S. at 60, 105 S.Ct. at 474. The jury convicted the defendant of certain counts charging her with using the telephone to facilitate felonious drug transactions, but acquitted her of the related conspiracy and substantive drug possession and intent to distribute charges. *Id.* The defendant argued that, since she was acquitted of conspiring to engage in illegal drug activities as well as the underlying drug possession and intent to distribute charges, the jury erred in convicting her of the related telephone facilitation charges. *Id.*

In denying the defendant's claim for relief from the jury's inconsistent verdicts, the Court:

> reject[ed], as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

*Id.* at 66, 105 S.Ct. 471. The *Powell* Court went on to state that jury verdicts are "insulate[d] ... from review" on the asserted ground of inconsistency. *Id.* at 68–69, 105 S.Ct. 471; *see also id.* at 66, 105 S.Ct. 471 ("The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable."). In conclusion, the Court held that "there is no reason to vacate [defendant's conspiracy] conviction merely because the verdicts cannot rationally be reconciled. [Defendant] is given the benefit of h[is] acquittal on the counts on which [ ]he was acquitted, and it is neither irrational nor illogical to require h[im] to accept the burden of conviction on the count[ ] on which the jury convicted." *Id.* at 69, 105 S.Ct. 471.

■ *Dunn* and *Powell* are fully applicable to the present case, and the reasoning described above which compels courts to not second-guess the jury's reasons for issuing a particular verdict is just as persuasive with respect to the case before us as it was in *Dunn* and *Powell.* Moreover, the two main cases cited by Defendant in support of his argument that an exception to the *Dunn* rule be carved out do not compel such a different result. In *United States v. Morales,* 677 F.2d 1 (1st Cir. 1982), which was decided after *Dunn* but before *Powell,* the First Circuit relied upon a claimed "narrow exception" to the "general rule that actual or apparent inconsistency in a jury verdict in a criminal

case is no basis for setting it aside." *Morales,* 677 F.2d at 3 (citations omitted). Specifically, the appellate court in *Morales* opined "that a jury's acquittal on substantive counts operates as an acquittal on the underlying conspiracy count where the acquittal on the substantive counts constitutes a determination that no overt act in support of the conspiracy took place." *Id.* (citation omitted). Defendant's reliance upon *Morales* is misplaced, since that case has been overruled.

In *United States v. Bucuvalas,* 909 F.2d 593 (1st Cir.1990), the First Circuit squarely held "that the 'rule of consistency' exception to the *Dunn* rule is no longer viable in light of Powell." *Bucuvalas,* 909 F.2d at 597. In doing so, the circuit court explained:

> In *Powell,* the [Supreme] Court unanimously reaffirmed the Dunn rule .... **The Court disapproved several recent cases, including our *Morales* decision,** that had "begun to carve exceptions out of the *Dunn* rule," saying that "[t]he rule established in *Dunn* has stood without exception in this Court for 53 years .... [W]e think it should [remain that way]." It held that, in the face of inconsistent verdicts, one cannot "necessarily assume [ ] that the acquittal ... was proper—the one the jury 'really meant.' " "It is equally possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense."

*Bucuvalas,* 909 F.2d at 595 (emphasis added; internal citations omitted). As the above-quoted passages from *Bucuvalas* make clear, *Morales* is no longer the law in the First Circuit. *Bucuvalas,* 909 F.2d at 595.

Defendant's citation to the Fifth Circuit's 1995 decision in *United States v.* *Campbell,* 64 F.3d 967 (5th Cir.1995), is similarly misplaced. In *Campbell,* the charges against the two defendants (a father and son) stemmed from an intricate web of corporate, real estate, and financial transactions wherein the son obtained a loan secured by a mortgage on property he did not own or control and then defaulted on the loan; the father and son then took steps to prevent foreclosure on the mortgage lien. *Id.* at 969–74. The son was charged with causing a false entry to be made in the bank's records for his signature on the mortgage of property he did not own or have authority to pledge. *Id.* The father was charged with aiding and abetting this offense. *Id.* Most relevant to this case, however, both defendants were also indicted, and found guilty of conspiring to commit bank fraud and substantive bank fraud in connection with their actions to prevent the bank from foreclosing on the mortgage lien. *Id.*

The Fifth Circuit first vacated the conspiracy conviction against the father for reasons unrelated to the issues in the present case. *Id.* Having vacated the conspiracy conviction against the father, and since there was no evidence of any other co-conspirators (charged or uncharged) having participated in the conspiracy alleged, the Fifth Circuit concluded that the son **could not have conspired with himself as a matter of law,** even if he acted with some intent to defraud. *Id.* at 975–78. Therefore, the evidence was ruled insufficient to prove that charge. *Id.*

The present case is readily distinguishable from *Campbell,* where the court reversed the defendant's convictions not because of inconsistencies in the jury's verdicts but due to a finding that, when " 'viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict,' " there was insufficient evidence that " 'a

rational jury could have found the essential elements of the offense[s] beyond a reasonable doubt.'" *See id.* at 974 *quoting United States v. Rodriguez*, 993 F.2d 1170, 1175 (5th Cir.1993). This conclusion was based not on the lack of a conviction on the substantive charges, but rather on the legal impossibility of the defendant (the son) conspiring with himself.

In the present case, on the other hand, Defendants Márquez and Rafael H. Pagan Santini were both convicted of conspiring with each other and/or with other admitted co-conspirators (Yamil Kourí Pérez, Gloria Ornelas Hall, Héctor Ramírez Lugo, Angel Corcino Mauras, Julio Corcino Mauras, and Roberto Unda Gómez) to obstruct justice, commit perjury, and suborn perjury in connection with the trial in *United States v. Kourí Pérez*, Crim. No. 97–91(JAF).

▉ Moreover, we believe that, given the evidence presented at trial, and the particular characteristics of the offenses charged, the jury's verdict in the present case is not logically inconsistent. The elements of the offenses charged are fundamentally different. Even though both the conspiracy and the substantive charges require proof of the same *mens rea*, as argued by Defendant in his reply, **they do not require proof of the same *actus reus*.** The conspiracy crime is in essence a law prohibiting **an agreement to commit** a crime, while the substantive counts prohibit the **actual commission** of the crimes. Conviction of the conspiracy count re-

quires proof of an agreement to further the ends of the conspiracy involving at least one other person, and proof of an over act **committed by at least one of the co-conspirators.** By contrast, the substantive obstruction offense, for example, requires proof **that Defendant himself** took a step to obstruct the proceedings with the intent to obstruct. *Cf. United States v. Nahoom*, 791 F.2d 841, 844 (11th Cir.1986) (no reversal required of conviction of conspiracy to import and possess marijuana because of acquittal of the RICO count which was premised on same conduct; difference in elements of offenses could easily explain verdicts).

▉ The Court believes that, from the evidence presented, a reasonable jury could have found that Defendant had the *mens rea* to commit the conspiracy offense.[1] On the other hand, the jury might have reasonably found that the Government **did not prove beyond a reasonable doubt that Defendant committed any of the overt acts himself.** Now, the difference in the elements of the conspiracy and substantive offenses, as described above, would allow a reasonable jury to convict Defendant of the conspiracy count in spite of such a finding because, having found that Defendant willingly joined the conspiracy, the acts of his co-conspirators are attributable to Defendant for the purposes of establishing the overt act element of the conspiracy offense.[2]

The evidence presented during trial in the present case included the consistent testimony of several admitted co-conspira-

---

1. The Government presented witnesses who testified that Márquez knew about the conspiracy and participated in meetings regarding the things to be done in furtherance of the conspiracy. The credibility of these witnesses, and the choice whether to believe all, **some** or none of the testimony of these witnesses are questions for the jury, not for the Court. Furthermore, the Government also presented circumstantial evidence linking Defendant to the conspiracy.

2. Of course, the jury could have reasonably found that other co-conspirators committed overt acts in furtherance of the conspiracy, since some of them have already been convicted of conspiring with each other and/or with other admitted co-conspirators, as mentioned earlier. In fact, the same jury also found Defendant Pagán Santini guilty of all counts against him, including the same con-

tors as to the fact that Defendant was a knowing and willing participant in the conspiracy. This evidence, combined with the corroborating documentary evidence presented, was sufficient for the jury to properly find that the Government proved beyond a reasonable doubt that (1) two or more people expressly or tacitly agreed to pursue an unlawful objective; (2) Defendant Márquez voluntarily agreed to participate in the charged conspiracy; and (3) **one or more of the members of the conspiracy** (but not necessarily Defendant himself) committed an overt act in furtherance of the charged conspiracy. *See United States v. Colon Munoz*, 192 F.3d 210, 226 (1st Cir.1999). Under these circumstances, we find that there was sufficient evidence for a reasonable jury to find Defendant guilty of the conspiracy count, beyond a reasonable doubt.

**Conclusion**

For all the reasons discussed above, Defendant's motion to vacate the verdict against him is **DENIED.**

**SO ORDERED.**

spiracy count, as a result of Defendant's same trial.