<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-1944

                   UNITED STATES OF AMERICA,
                           Appellee,

                               v.

                     EDWIN HERNANDEZ, A/K/A
                    EDWIN HERNANDEZ-FAVALE,
                     Defendant, Appellant.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Perez-Gimenez, U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
          Coffin and Bownes, Senior Circuit Judges.
                                
                                

    Edgardo Rodriguez-Quilichini, Assistant Federal Defender, with
whom Joseph C. Laws, Jr., Federal Public Defender, was on brief,
for appellant.
    Antonio R. Bazan, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Jos A. Quiles-Espinosa,
Senior Litigation Counsel, Camille Vlez-Riv and Nelson Prez-
Sosa, Assistant United States Attorneys, were on brief, for the
United States.

June 12, 1998

 SELYA, Circuit Judge.  Tried on a three-count indictment,
defendant-appellant Edwin Hernandez-Favale (Hernandez) prevailed on
two.  He now seeks a clean sweep.  For the reasons that follow, we
affirm his conviction.
I.  BACKGROUND
 We present the facts in the light most congenial to the
guilty verdict, consistent with record support.  See United Statesv. Maraj, 947 F.2d 520, 522-23 (1st Cir. 1991).
 In the early evening of January 30, 1996, Juan Carlos
Lado, driving a Nissan sports car, stopped at a traffic light in
the Isla Verde section of San Juan, Puerto Rico.  A stranger poked
a gun (described as a small, nickel-plated pistol) through Lado's
open car window, threatened his life, forced him to exit the
vehicle and disgorge his valuables, and ultimately absconded with
the car and the loot.  Lado kept a .45 caliber pistol secreted
within the vehicle, and the perpetrator unwittingly made off with
that firearm as well.
 Lado immediately called the police, who were able to
recover his automobile that night.  Lado retrieved it the next day.  
His pistol was gone, but he discovered a full ammunition magazine
(which neither belonged to him nor fit his gun) under the driver's
seat.  Lado informed the authorities of these facts and turned over
the magazine.
 On February 3, law enforcement officers arrested
Hernandez (a previously convicted felon who had a history of
involvement in violent crimes) and a companion (known only as
Alicea) on charges unrelated to the January 30 carjacking.  When
the police discovered a pistol on Alicea's person and identified it
by its serial number as Lado's, they quickly arranged a
photographic spread.  Reviewing the spread, Lado tabbed Hernandez
as the man who accosted him and absconded in his Nissan.
 A federal grand jury thereafter charged Hernandez with
carjacking, 18 U.S.C.  2119(1) (1994), using or carrying a firearm
during a crime of violence, 18 U.S.C.  924(c)(1) (1994), and being
a felon in possession of a firearm, 18 U.S.C.  922(g)(1) (1994).  
A petit jury acquitted Hernandez on the first two counts but
convicted him on the third.  Judge Perez-Gimenez denied Hernandez's
post-trial motions and this appeal ensued.
II.  ANALYSIS
 The appellant attacks his conviction on three fronts.  We
discuss his claims sequentially, interspersing our discussion with
further facts as necessary to place each claim into proper
perspective.
                   A.  Judgment of Acquittal.
 After the jury verdict, the appellant moved under Fed. R.
Crim. P. 29(a) for judgment of acquittal on the third count.  The
district court denied this motion, adjudging the evidence presented
at trial sufficient to support the felon in possession conviction.  
On appeal, Hernandez admits his status as a previously convicted
felon but assigns error to the lower court's ruling on the ground
that the government failed to prove his possession of a firearm
beyond a reasonable doubt.
 We review Rule 29 determinations de novo.  See United
States v. Carroll, 105 F.3d 740, 742 (1st Cir.), cert. denied, 117
S. Ct. 2424 (1997).  The Rule 29 standard is identical in both the
trial and appellate courts; the tribunal must discern "whether,
after assaying all the evidence in the light most amiable to the
government, and taking all reasonable inferences in its favor, a
rational factfinder could find, beyond a reasonable doubt, that the
prosecution successfully proved the essential elements of the
crime."  United States v. O'Brien, 14 F.3d 703, 706 (1st Cir.
1994).  This formulation requires that "we consider all the
evidence, direct and circumstantial, and resolve all evidentiary
conflicts in favor of the verdict."  Carroll, 105 F.3d at 742.
 In support of his claim of evidentiary insufficiency, the
appellant makes two basic points.  First, he asseverates that there
was no direct evidence to support his conviction because the
authorities never recovered the carjacker's gun (and, therefore,
the jury never saw it).  We reject this asseveration out of hand.  
The government presented direct evidence of Hernandez's guilt in
the form of Lado's eyewitness testimony that Hernandez was armed.  
(Indeed, Lado described the gun in some detail and testified that
the appellant first put it to his head and later hit him across the
mouth with it.)  Since the jurisprudence of Rule 29 requires that
a reviewing court defer credibility determinations to the jury, seeO'Brien, 14 F.3d at 706, this testimony, in itself, is enough to
support the "possession of a firearm" element of the offense of
conviction.
 In all events, it is common ground that "the criminal law
does not place a special premium on direct evidence."  Id.  To the
contrary, the prosecution may satisfy its burden of proof by direct
evidence, circumstantial evidence, or any combination of the two.  
See id.; see also United States v. Echeverri, 982 F.2d 675, 677
(1st Cir. 1993).  Given Lado's testimony and the otherwise-
unexplained presence of a magazine full of bullets in the stolen
car, a rational jury surely could have believed that the appellant
brandished a firearm on January 30, 1996.
 The appellant next posits that his conviction cannot
stand because it is inconsistent with the jury's verdict on the
other two counts.  This thesis, too, is flawed.  For one thing,
inconsistent verdicts do not automatically require reversal of a
conviction.  See United States v. Powell, 469 U.S. 57, 62 (1984);
United States v. Dunn, 284 U.S. 390, 393-94 (1932); United Statesv. Bucuvalas, 909 F.2d 593, 597 (1st Cir. 1990).  Both the interest
and the appearance of justice are fully vindicated as long as the
reviewing court assures itself that, regardless of an acquittal in
some other case or on some other count, the evidence is legally
sufficient to support a guilty verdict on the count of conviction.  
See Powell, 469 U.S. at 66; Bucuvalas, 909 F.2d at 597.  The
evidence of record here easily passes that modest test.
    For another thing, a close look at the statutes involved
in this case reveals no necessary inconsistency.  The statute
underlying the carjacking count, on which the jury acquitted the
appellant, requires the prosecution to prove beyond a reasonable
doubt that the defendant (1) took a motor vehicle, (2) that has
moved in interstate commerce, (3) from another person, (4) by force
and violence or by intimidation, (5) with the intent to cause death
or serious bodily harm.  See 18 U.S.C.  2119 (1994).  The statute
underlying the second count, on which the jury also acquitted,
requires the government to prove beyond a reasonable doubt that the
defendant (1) used or carried a firearm, (2) during and in relation
to a crime of violence or drug trafficking offense.  See 18 U.S.C.
924(c)(1) (1994).  In theory, the jury could have decided that,
while Hernandez was indeed the person who accosted Lado, gun in
hand, the government failed to prove the intent element in the
carjacking statute (and, thus, failed to prove the "crime of
violence" element needed to convict under the "use and carry"
statute).  The probability of such a scenario is not the issue.  It
is possible, and a finding made pursuant to this scenario would not
in any way impugn the guilty verdict on the felon in possession
count.  So viewed, the verdicts are not irretrievably
inconsistent.
                B.  The Prosecution's Summation.
    The appellant next calls our attention to the
prosecutor's comments concerning constructive possession.  He
assigns error both to the trial court's overruling of his
contemporaneous objection to those comments and to the court's
denial of his subsequent motion for a mistrial.
    Our approach is familiar.  We first must determine
whether the trial court abused its discretion in overruling the
objection (thus, in effect, deeming the prosecutor's remarks
proper), and, if so, we must proceed to decide whether the
offending remarks were sufficiently prejudicial that they served to
deny the defendant a fair trial.  See United States v. Grabiec, 96
F.3d 549, 552 (1st Cir. 1996); United States v. Wood, 982 F.2d 1,
4 (1st Cir. 1992).  As to the appellant's related point, we
likewise review the district court's resolution of a mistrial
motion under an abuse of discretion rubric.  See United States v.
Pierro, 32 F.3d 611, 617 (1st Cir. 1994).  Here, because the
appellant premised his motion for a mistrial on the challenged
portion of the prosecutor's summation, the two assignments of error
merge into a single forensic unit, and we consider them as such.
    The government concedes that it charged Hernandez in
count three with possession of a firearm other than Lado's .45
caliber pistol.  The appellant maintains, however, that the
prosecutor's reference to Lado's gun confused the issue and led to
a conviction on count three based on his constructive possession of
that weapon.  In short, the appellant insists that, because of the
prosecutor's improper argument, the jury found him guilty of
possessing a firearm (namely, Lado's pistol) other than the one for
which he was indicted (namely, the small, nickel-plated pistol that
never surfaced).
    This theory lacks force.  The record reveals that the
prosecutor's summation was well within the pale.  In it, he
suggested that, because Lado's pistol was in Alicea's waistband
when Alicea and Hernandez were arrested, the jury could find
Hernandez to have had constructive possession of Lado's pistol onFebruary 3 and could infer, based on such a finding, that Hernandez
was at the crime scene on January 30 and took the car containing
the weapon.  If any ambiguity exists as to the purport of the
prosecutor's soliloquy    and we see none   his remarks during the
rebuttal portion of his closing statement, reproduced in the
margin, make it crystal clear that the prosecutor aimed his
constructive possession reference solely in this direction.
    That ends the matter.  Since the challenged portion of
the summation was proper, the district court did not err either in
overruling the appellant's objection or in denying his subsequent
motion for a mistrial.
                       C.  The Jury Note.
    While a jury deliberates, the attorneys typically hover
near an empty courtroom awaiting the verdict.  Sometimes, however,
the judge cuts counsel some slack and permits them to wander.  In
this instance, after charging the jury, Judge Perez-Gimenez gave
the attorneys clear instructions:  they need not remain in the
courtroom, but they were to leave word of their whereabouts with
the clerk and be available to the court on ten minutes notice.  The
judge made it plain that he would wait no longer than ten minutes
should the jury propound a question.  The appellant's trial counsel
availed herself of the court's largesse and left word that she
would be in a magistrate judge's courtroom on the same floor of the
courthouse.
    During the course of their deliberations, the jurors sent
the judge a note requesting a definition of the term "possession of
a firearm" vis--vis count three.  Judge Perez-Gimenez summoned the
attorneys.  When the appellant's counsel did not appear within the
allotted time, the judge summoned her again and waited an
additional ten minutes, but to no avail.  The judge then took the
bull by the horns and responded to the jurors' query by furnishing
them with a written copy of the instruction on possession that he
previously had read as part of his charge.  This instruction
included a passage on constructive possession.  When the
appellant's lawyer finally returned to the courtroom and learned
what had transpired, she voiced no objection to the judge's
handling of the note.  Shortly thereafter, the jury returned its
verdict.
    The appellant subsequently filed a motion for a new trial
predicated upon the jury note incident.  The judge denied the
motion.  Hernandez assigns error.  We discern none.
    The preferred practice for addressing a question from a
deliberating jury includes ensuring that the question is reduced to
writing, marking the note as an exhibit for identification, sharing
it with counsel, and affording the lawyers an opportunity to
suggest an appropriate rejoinder.  See United States v. Parent, 954
F.2d 23, 25 (1st Cir. 1992); Maraj, 947 F.2d at 525; United Statesv. Akitoye, 923 F.2d 221, 225-26 (1st Cir. 1991).  Withal, this
practice is not the product of an ironclad rule, and the trial
court retains a modicum of flexibility to adjust to the exigencies
of particular situations.  So here:  under the unusual
circumstances of this case, we uphold the judge's actions
notwithstanding his deviation from preferred practice.   
    Courts must operate in an orderly fashion.  Thus, when a
judge sets a reasonable restriction on counsel's actions and
communicates it clearly, lawyers subsequently violate that
restriction at their peril.  See Smith v. Massachusetts Inst. of
Technology, 877 F.2d 1106, 1110 (1st Cir. 1989).  This case
illustrates the point.  The judge forewarned all the attorneys that
he would wait no longer than ten minutes for them to respond if
their presence was required.  When he received the jury note, he
sent a court security officer (CSO) to the magistrate's courtroom
to alert appellant's counsel.  The CSO made three separate trips
down the hall, but the attorney did not respond.  After more than
twenty minutes had passed, the court then acted unilaterally
(without consulting the prosecutor, who had been patiently awaiting
opposing counsel's arrival) and furnished the jurors with an
instruction that he previously had read to them without objection.  
Under the circumstances, this was a reasonable course of action.  
The failure to follow standard practice was not attributable to
judicial error, but to counsel's default.  See id. (warning that if
lawyers absent themselves during jury deliberations, "they take
their chances on what is said and done by the court in their
absence").
    We hasten to add that, even were we prepared to hold that
Judge Perez-Gimenez's actions constituted cognizable error, we
would pronounce any such error harmless.  A party's failure
properly to preserve an objection to a jury instruction contained
in the original charge forfeits the point, and the defaulting party
cannot resuscitate the forfeited point by objecting to the court's
later repetition of the same instruction in response to a jury
question.  See Fan Fare, Inc. v. Fourdel Indus., Ltd., 563 F. Supp.
754, 756-57 (M.D. Ala. 1983), aff'd, 732 F.2d 943 (11th Cir. 1984)
(Table); cf. Almonte v. National Union Fire Ins. Co., 787 F.2d 763,
767-69 (1st Cir. 1986).  Moreover, the judge's response here hewed
closely "to the approximate boundaries of the jury's inquiry,"
United States v. Ladd, 885 F.2d 954, 961 (1st Cir. 1989), and the
appellant, even at this late date, has pointed to no misstatement
of any legal principle covered in the instruction.  See, e.g.,
United States v. Rogers, 41 F.3d 25, 30 (1st Cir. 1994) (finding no
error in jury instruction containing substantially similar
definition of constructive possession).  Consequently, we discern
no substantial prejudice stemming from the judge's handling of the
note.
III.  CONCLUSION
    We need go no further.  Although the jury's verdict is
oddly configured, that portion of the verdict which relates to
count three is amply supported by the evidence.  Because that is
so, and because neither the prosecutor's summation nor the judge's
handling of the jury note afford any basis for setting aside the
conviction, the judgment below must be

Affirmed.

</body>

</html>